UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMEL POWELL,

                        Plaintiff,

           -v.-

THE CITY OF NEW YORK,

                        Defendant.

23 Civ. 10263 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Jamel Powell brings this *pro se* action against Defendant City of New York, asserting violations of his constitutional rights arising from his detention at the Vernon C. Bain Center ("VCBC") and other of Defendant's correctional facilities. In brief, Plaintiff claims that he was exposed to hazardous materials including asbestos; poor ventilation; contaminated bathing and drinking water; and shower and toilet facilities containing black mold, blood, fecal matter, and insects. For these alleged wrongs, Plaintiff seeks monetary damages of $5 million, as well as interest and costs. Before the Court now is Defendant's unopposed motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in this Opinion, the Court grants the motion.

## BACKGROUND[1]

### A.  Factual Background

Plaintiff's allegations arise from his time in custody as a pretrial detainee at the VCBC and "other correctional facilities maintained by [D]efendant[]" from September 5, 2023, through the time of his Complaint, which was filed on November 21, 2023.  (Compl. 2, 4).  As an initial matter, the precise time period in question is somewhat unclear:  Plaintiff also specifies August 25, 2023, "to the current date of Oct[ober] 8[], 2023 (and ongoing)" as the relevant period.  (*Id.* at 4).  Additionally, Plaintiff references "[p]revious incarcerations[,]" during which he experienced similar conditions, which he claims are verifiable by his housing history "dating back to 1989" and his booking records.  (*Id.* at 4-5).

According to Plaintiff, during those periods, he was "exposed to chemicals," "toxic building materials," "[a]sbestos," "hazardous materials, poor ventilation[,] and a contaminated bathing/drinking water supply" while housed at the VCBC and "other units/structures" operated by Defendant.  (Compl. 4-6).  He adds that the shower facilities had curtains that were "caked black with black mold" and other materials including "blood [and] fecal matter," and that the showers, sinks, urinals, and toilets were also "befouled by [b]lack [m]old and viruses; putrid sitting water and waterborne organisms" including "[b]lack [l]arvae" and "[i]nsects."  (*Id.* at 6, 8).  Plaintiff also alleges exposure to "rusted

---

[1]  This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss (Dkt. #15) as "Def. Br."

building materials/metal/toxic paint(s)" that were "eroding in sitting water and debris." (*Id.*). He claims that Defendant "indifferently and knowing[ly] exposed" him to those conditions, which he states are known by the U.S. Environmental Protection Agency ("EPA") and medical community to be detrimental to humans. (*Id.* at 5).

What is more, Plaintiff alleges that he has developed myriad injuries that are "directly related to and/or [are] exacerbated by" the conditions of his confinement, including: pulmonary and respiratory illnesses; headaches and migraines; asthma; calcium deficiency; sleep apnea; eczema and other dermatological ailments; vomiting and acid reflux; depression; congestive heart failure; confusion and vision impairment; lethargy; nervousness and post-traumatic stress disorder; weight loss; and restless leg syndrome. (Compl. 6-7, 9). He adds that additional medical conditions, including cancer, could manifest at a later date. (*Id.* at 10). As support for his claims, Plaintiff cites: (i) his housing history; (ii) "electronic complaints (311) regarding medical services/grievances"; (iii) his "sick call complaints"; (iv) EPA investigations of the units, listings of hazardous materials used in the construction of the units, and testing; (v) asbestos logs; and (vi) the units themselves. (*Id.*).[2]

---

2   The Court takes judicial notice of the fact that the VCBC is now closed. *See Facilities Overview*, N.Y.C. Dep't of Correction, https://www.nyc.gov/site/doc/about/facilities.page (last visited Jan. 3, 2025) (listing the VCBC as a closed facility); *New York City's Vernon C. Bain Correctional Center, the Country's Last Operating Prison Ship, Set to Close*, CBS NEWS (Oct. 31, 2023, 11:55 PM), https://www.cbsnews.com/newyork/news/vernon-c-bain-correctional-center-closing-nyc-prison-ship (explaining that the VCBC would be fully vacated by early November 2023); *Barrow* v. *Brann*, No. 20 Civ. 09417 (ER) (SDA), 2024 WL 4026252, at *1 n.1 (S.D.N.Y. Sept. 3, 2024) (taking judicial notice that the VCBC is closed); *see generally* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not

## B.  Procedural Background

Plaintiff initiated the instant action on November 21, 2023, with the filing of the Complaint. (Dkt. #1). Plaintiff named the City of New York and the Department of Corrections ("DOC") as defendants. (*Id.*). On the same date, Plaintiff filed a request for leave to proceed *in forma pauperis* ("IFP"). (Dkt. #2). The Court granted his IFP application on December 12, 2023 (Dkt. #4), and issued an order of service on December 21, 2023, that dismissed the claims brought against the DOC and requested that the City of New York — the one remaining Defendant — waive service of summons (Dkt. #6). Defendant subsequently waived service of summons. (Dkt. #9).

On February 27, 2024, Defendant filed a pre-motion letter requesting a conference to discuss its contemplated motion to dismiss the action. (Dkt. #12). On March 19, 2024, the Court issued an order, informing the parties that the Court had carefully reviewed Defendant's pre-motion letter and determined that a conference was not necessary. (Dkt. #13). Instead, the Court *sua sponte* granted Plaintiff leave to amend his Complaint, if he chose to, in response to the issues raised in Defendant's pre-motion letter, and it specified that failure to file an amended complaint on or before April 26, 2024, would be deemed a waiver. (*Id.*). Plaintiff did not file an amended complaint.

On May 17, 2024, in accordance with the schedule set forth in the Court's March 19, 2024 Order, Defendant filed its motion to dismiss the

---

subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

4

Complaint. (Dkt. #14). On June 27, 2024, after the deadline to file an opposition had passed, the Court *sua sponte* granted Plaintiff an extension of time to file his opposition. (Dkt. #18). The Court received no opposition, and so it considers briefing on the motion to be complete.

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

The Court is tasked with applying the same standard irrespective of whether a motion to dismiss is unopposed. *See Haas* v. *Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) ("In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency[.]'" (quoting *McCall* v. *Pataki*, 232 F.3d 321, 322 (2d Cir. 2000))); *accord Blanc* v. *Cap. One Bank*, No. 13 Civ. 7209 (NSR), 2015 WL 3919409, at *2-3 (S.D.N.Y. June 24, 2015). While the plausibility

5

requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Nor does a plaintiff's failure to respond change the standard. "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall*, 232 F.3d at 322-23. Accordingly, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not [itself] warrant dismissal," and the district court must determine whether dismissal of the complaint is appropriate on the merits. *Id.* at 323.

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint. *Id.* (internal citation omitted); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). In resolving the instant motion, the Court considers both the Complaint and Plaintiff's booking records that are referenced in it.

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (further citation omitted)). "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And even in the *pro se* context, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

### 2. Section 1983 Claims of Unsanitary Conditions by Pretrial Detainees

Courts in the Second Circuit analyze a pretrial detainee's claim of unconstitutional conditions of confinement under the Fourteenth Amendment's

7

Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause.  *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see generally Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *3 (S.D.N.Y. Feb. 5, 2018).  Nevertheless, "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Darnell*, 849 F.3d at 29 (quoting *City of Revere* v. *Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

To establish a Section 1983 claim for unconstitutional conditions of confinement, a pretrial detainee must satisfy two prongs.  *Darnell*, 849 F.3d at 29; *accord Edwards* v. *Arocho*, — F.4th —, No. 22-585-pr, 2024 WL 5244996, at *7 (2d Cir. Dec. 30, 2024).  *First*, to satisfy what is known as the objective prong, the pretrial detainee must show "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]"  *Darnell*, 849 F.3d at 29.  To constitute an objective deprivation, "the conditions, either alone or in combination," must "pose an unreasonable risk of serious damage to [the detainee's] health."  *Id.* at 30 (quoting *Walker* v. *Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"  *Id.* (quoting *Blissett* v. *Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).  The Second Circuit has "reiterated that the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their

severity and duration, not the detainee's resulting injury." *Id.* (citing *Willey* v. *Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)).

*Second*, to satisfy what is known as the subjective prong, the pretrial detainee must show "that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Though this prong is often characterized as "subjective," it is "defined objectively," *id.* at 29, 35, and therefore better understood as the *mens rea* prong. Indeed, the so-called subjective prong requires proof that the defendant "acted intentionally to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[ ] knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphases added).

### 3. Section 1983 Claims Against Municipalities[3]

"[M]unicipalities may be sued directly under [Section] 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." *Batista* v.

---

[3]   In his Complaint, Plaintiff does not attribute conduct to any state actor, *e.g.*, a DOC employee, but rather pleads in the passive voice that he was exposed to hazardous substances and conditions while detained. In recognition of his *pro se* status, the Court will construe the Complaint to allege that the conditions of which he complains are the product of the action or inaction of one or more DOC employees and were not naturally occurring. However, the Court cannot construe the Complaint to allege that any DOC employee knew that any of the proffered conditions posed a serious risk to Plaintiff's health and were deliberately indifferent to that risk. *Cf. Edwards* v. *Arocho*, — F. 4th —, No. 22-585-pr, 2024 WL 5244996, at *8-9 (2d Cir. Dec. 30, 2024) (finding allegations that plaintiff handed grievance complaining of conditions of confinement to one corrections employee, and that he orally complained about conditions to "officers making their rounds," were sufficient at the Rule 12(b)(6) stage to allege a Fourteenth Amendment violation).

*Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  Under *Monell* and its progeny, municipalities are not subject to liability for Section 1983 claims under a theory of *respondeat superior*, but rather on the basis that their policies or customs inflicted the alleged injuries.  *Id.*

     To hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (i) the existence of an official policy or custom that (ii) causes the plaintiff to be subjected to (iii) a denial of a constitutional right.  *Batista*, 702 F.2d at 397; *accord Torcivia* v. *Suffolk Cnty., New York*, 17 F.4th 342, 354-55 (2d Cir. 2021).  The plaintiff may show the existence of such a policy or custom by identifying any of the following: (i) an express policy or custom; (ii) an authorization of a policymaker of the unconstitutional practice; (iii) failure of the municipality to train its employees, which failure exhibits a "deliberate indifference" to the rights of its citizens; or (iv) a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."  *Corley* v. *Vance*, 365 F. Supp. 3d 407, 438 (S.D.N.Y. 2019), *aff'd sub nom. Corley* v. *Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order); *see also Outlaw* v. *City of Hartford*, 884 F.3d 351, 372-73 (2d Cir. 2018) (discussing what constitutes an official municipal policy and deliberate indifference).

**B. Analysis**

Defendant moves to dismiss the Complaint on the ground that Plaintiff has failed to allege facts that rise to the level of a constitutional violation. (Def. Br. 5-8). Specifically, Defendant claims that Plaintiff has not satisfied either of the two prongs set forth in *Darnell*. (*Id.*). The Court analyzes each in turn and concludes that Plaintiff has satisfied the first prong but not the second prong.

**1. Plaintiff Sufficiently Alleges an Objective Deprivation**

Beginning with the first prong, Defendant argues that Plaintiff's booking records memorializing his periods of incarceration undermine his conditions of confinement claim. (Def. Br. 7).[4] Those records show that Plaintiff was incarcerated within the New York City Department of Correction during three periods: from on or about August 31, 2023, to on or about October 20, 2023; from on or about February 5, 2017, to on or about April 11, 2017; and from on or about April 30, 2010, to on or about May 11, 2010. (Dkt. #16-1). Of those three periods, only the most recent can give rise to an actionable claim, because "Section 1983 actions filed in New York are ... subject to a three-year statute of limitations." *Hogan* v. *Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Accordingly, Defendant argues that (i) the dates of occurrence of Plaintiff's alleged exposure to unconstitutional conditions of confinement cannot be ongoing, as Plaintiff claimed in the Complaint, and (ii) Plaintiff has "failed to

---

[4]  Defendant claims that the Court is entitled to consider the booking records. (Def. Br. 7). The Court agrees that it may consider those records because Plaintiff "incorporated" the records "in the [C]omplaint by reference," *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016), in stating that he was exposed to hazardous conditions "as verifiable" by his previous booking records and housing history (Compl. 5).

11

plausibly allege how the two-month period of incarceration in 2023 at issue presents severe conditions of confinement." (Def. Br. 1, 8).

The Court agrees with Defendant that the only relevant period is from on or about August 31, 2023, to on or about October 20, 2023.[5]  However, the Court finds that Plaintiff has, at this phase, alleged deprivations during that period that, in combination, are sufficiently severe.  As an initial matter, while Defendant is correct that courts are to assess conditions of confinement in part with reference to their duration, *see Willey*, 801 F.3d at 68, "Defendant[] cannot overcome Plaintiff's claim for unconstitutional conditions of confinement *solely* on the ground that the conditions lasted only a limited period of time," *Perkins* v. *Presley*, No. 18 Civ. 3590 (MKV), 2022 WL 769339, at *7 (S.D.N.Y. Mar. 14, 2022) (emphasis added).  If they are sufficiently severe, allegations of exposure to unsanitary conditions over a two-month period may rise to the level of an objective deprivation.  *See Darnell*, 849 F.3d at 37 (holding that the plaintiffs' claims should not have been dismissed on the grounds that none of the plaintiffs was exposed to the alleged unconstitutional conditions for longer than twenty-four hours and did not suffer serious injury).  Here, Defendant does not address the severity of the alleged conditions in its brief, other than to say that "Plaintiff's allegations regarding the nature of the

---

[5]   Although the Complaint was docketed by the Clerk of Court on November 21, 2023, the Court reads the Complaint as alleging that the unconstitutional exposures were "ongoing" because Plaintiff was still detained at the VCBC when he wrote the Complaint. (*See* Dkt. #16-1 (booking records showing that Plaintiff was detained at the VCBC until October 18, 2023); Compl. 4 (Plaintiff referring to October 8, 2023, as "the current date")).

conditions and the 'many health issues directly related to and/or exacerbated by the issues cited' fail to cross the line from conceivable to plausible." (Def. Br. 8 (internal citation omitted)).

Plaintiff has alleged that, over the two-month period that the Court can consider, he was exposed to hazardous materials, including asbestos and toxic paint, in spaces with poor ventilation at the VCBC. (Compl. 4-6, 8). Another court in this District previously found comparable allegations "sufficient to describe a substantial risk of serious harm." *Gibson* v. *City of New York*, No. 96 Civ. 3409 (DLC), 1998 WL 146688, at *4 (S.D.N.Y. Mar. 25, 1998). There, the plaintiff claimed that he had been exposed to asbestos, insect infestation, and possibly lead paint while detained for thirty days at a facility that had allegedly been closed by a court order. *Id.* Although Plaintiff in the instant matter does not allege that he was housed at the VCBC *after* it had been closed by court order, the facility was closed within a month of his release from it. *See supra* note 2. Moreover, Plaintiff's allegations of unsanitary conditions are "coupled" with the "mutually enforcing condition[]" of "poor ventilation." *Perkins*, 2022 WL 769339, at *7 (stating that unsanitary conditions can rise to the level of an objective deprivation, in particular, where there are mutually enforcing conditions).

Furthermore, Plaintiff has alleged that the shower facilities were "caked black with black mold" and other materials including "blood [and] fecal matter[,]" and that the sinks, urinals, and toilets were also contaminated with black mold, sitting water, and insects. (Compl. 6, 8). Again, another court in

13

this District previously found similar conditions sufficient to constitute an objective deprivation. *See Curry* v. *Kerik*, 163 F. Supp. 2d 232, 236 (S.D.N.Y. 2001). In *Curry*, the plaintiff alleged that he was exposed to an unsanitary and hazardous showering area for over nine months; that the shower facility leaked; that there were tiles falling off the wall; and that there were no shower curtains or floor mats. *Id.* at 234-35. The court also considered a grievance filed by the plaintiff, which stated that the leaks caused the floor to be slippery, and that there were bugs in the shower facilities. *Id.*

Although the relevant time period in the present case is shorter than that in *Curry*, the alleged exposure was not for a nominal amount of time, and the alleged conditions are more severe in some respects. Assuming the truth of the Complaint's factual allegations and construing them broadly, as the Court must when considering a motion to dismiss in a *pro se* case, Plaintiff was exposed to biohazards in spaces with poor ventilation for two months while housed at the VCBC. That is sufficient to describe a substantial risk of serious harm. *See Vail* v. *City of New York*, No. 18 Civ. 11822 (VEC) (SLC), 2020 WL 3548074, at *7 (S.D.N.Y. May 15, 2020) (finding that the conditions, considered together, including exposure to contaminated water and insects for eight days, met the objective prong), *report and recommendation adopted*, No. 18 Civ. 11822 (VEC) (SLC), 2020 WL 3547736 (S.D.N.Y. June 30, 2020); *see also Edwards*, 2024 WL 5244996, at *7-8 (concluding that "allegations that Edwards was compelled to live in a prison cell coated in black mold and overrun by vermin are enough to establish an objective deprivation that posed

14

a serious health risk"); *Mitchell* v. *Keane*, 974 F. Supp. 332, 344 (S.D.N.Y. 1997) (finding that dripping sewage constituted a denial of the minimal necessities of civilized life), *aff'd*, 175 F.3d 1008 (2d Cir. 1999). Accordingly, the Court proceeds to consider whether Plaintiff plausibly alleges that any of Defendant's employees or agents acted with the requisite deliberate indifference. *See Singleton* v. *City of New York*, No. 20 Civ. 8570 (ALC), 2022 WL 4620174, at *5 (S.D.N.Y. Sept. 30, 2022) (finding that detainee's claim that food he was provided was not fit for human consumption was sufficient to allege a claim of an objective deprivation, but was not sufficiently pleaded to meet the subjective prong, because complaint did not allege specific facts showing that Defendant was deliberately indifferent to the risk posed by the food).

### 2. Plaintiff Fails to Allege the Requisite State of Mind

Plaintiff's claim fails on the second prong. In the Complaint, Plaintiff alleges simply that Defendant "indifferently and knowing[ly] exposed" him to hazardous and unsanitary conditions at the VCBC and has shown "indifference to [his] Constitutional Right(s)." (Compl. 5). In doing so, however, Plaintiff offers a legal conclusion masked as a factual conclusion, which the Court is not bound to accept. *See Rolon*, 517 F.3d at 149. The only allegation in the Complaint that goes to the second prong is that Plaintiff filed "electronic complaints (311) regarding medical services/grievances[.]" (Compl. 10). The Court interprets this statement to mean that Plaintiff filed complaints about medical issues with the City of New York's 311 Hotline, ostensibly putting

15

Defendant's employees on notice of those issues. But Plaintiff does not specify when those complaints were made, whether they made reference to the hazardous conditions at the VCBC during the relevant time period, whether his concerns were communicated to anyone at DOC, or whether he received any response from DOC. Accordingly, Plaintiff fails to plead facts to support the conclusion that any of Defendant's agents or employees "acted intentionally to impose the alleged condition[s], or recklessly failed to act with reasonable care to mitigate the risk that the condition[s] posed to [Plaintiff]." *Darnell*, 849 F.3d at 35; *see also Perkins*, 2022 WL 769339, at *8 (finding that the plaintiff could not establish that any named defendant acted with deliberate indifference where there was no evidence that the named defendants knew about the allegedly unsanitary conditions, acted intentionally or recklessly to impose those conditions, or failed to take steps to remedy the conditions). Because Plaintiff fails to allege that anyone working for Defendant had the requisite state of mind, he cannot plausibly state a claim of unconstitutional conditions of confinement under the Due Process Clause of the Fourteenth Amendment.

### 3.     **Plaintiff Fails to Allege Municipal Liability**

Finally, even if Plaintiff had sufficiently pleaded facts to support the conclusion that anyone at the VCBC acted with deliberate indifference with respect to his conditions of confinement there, Plaintiff has not sufficiently pleaded facts to hold Defendant — a municipality — liable under Section 1983. *See Batista*, 702 F.2d at 397. As discussed, a municipality can be held liable under Section 1983 only if Plaintiff can show that "the municipality deprived

him of a constitutional right pursuant to a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers.'" *Vail*, 2020 WL 3548074, at *5 (quoting *Monell*, 436 U.S. at 690). In the Complaint, Plaintiff does not allege any facts showing that the unsanitary conditions to which he was allegedly exposed at the VCBC were the result of an express policy or custom; an authorization by a policymaker; a failure of the Defendant to train its employees that suffices to demonstrate deliberate indifference; or a permanent and well-settled practice of the municipality. *Cf. Corley*, 365 F. Supp. 3d at 438. Courts in this District have dismissed similar claims against municipal defendants where the complaint did not assert that a policy or custom was the basis for the alleged constitutional violations. *See, e.g.*, *Vail*, 2020 WL 3548074, at *9-10; *Barrow* v. *Brann*, No. 20 Civ. 9417 (ER) (SDA), 2024 WL 4026252, at *5 (S.D.N.Y. Sept. 3, 2024); *Smith* v. *Westchester Cnty.*, No. 19 Civ. 3605 (NSR), 2021 WL 2856515, at *4-5 (S.D.N.Y. July 7, 2021). This Court is persuaded by the logic of those decisions, and will follow suit.

## CONCLUSION

For the foregoing reasons, Defendant's unopposed motion to dismiss is GRANTED. Because the Court has previously provided Plaintiff with the opportunity to amend his Complaint, and Plaintiff waived his right to do so (Dkt. # 13), the dismissal is with prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this

case. The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

    SO ORDERED.

Dated:    January 3, 2025
           New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge